MORENCI COPPER CO. v. FREER, Atty. Gen.

(Circuit Court, S. D. West Virginia. November 30, 1903.)

1. STATUTES—CONSTITUTIONALITY—STATE DECISIONS—EFFECT.

A decision of the highest court of a state sustaining the constitutionality of a state statute, while binding on the federal courts so far as it affects the validity of the statute under the state Constitution, is not binding on the question whether the statute is in violation of the federal Constitution.

2. CORPORATIONS—TAXATION—STATUTES—ENFORCEMENT—INJUNCTION— TENDER OF VALID TAX.

Where a bill to restrain an attorney general from proceeding to procure the forfeiture of a corporation's charter for nonpayment of a license tax under a state statute increasing such tax contained no allegation that the original tax imposed was invalid, the payment or tender of the tax so originally imposed was a prerequisite to the corporation's right to relief.

3. FEDERAL COURTS—SUITS AGAINST STATE OFFICERS.

Const. U. S. Amend. art. 11, provides that the judicial power of the United States shall not be construed to extend to any suit at law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state; and Const. W. Va. art. 6, § 35, declares that the state of West Virginia shall never be made defendant in any court of law or equity. Held, that a suit by a West Virginia corporation to restrain the Attorney General of that state from instituting a suit in the name of the state to forfeit the corporation's charter was in effect a suit against the state, and was not, therefore, within the jurisdiction of the federal courts.

4. SAME—OFFICERS—INTEREST.

Under Acts W. Va. 1901, p. 116, c. 35, § 38, providing that in a suit against a corporation by the Attorney General for the forfeiture of a corporation's charter for nonpayment of license taxes, a fee of $25.00 is to be taxed to the Attorney General in case the proceeding is stopped by the corporation's paying the tax or penalty, but that in no case shall such fee be paid by the state, the Attorney General is not personally interested in such proceeding by reason of such fee so as to render a proceeding by him on behalf of the state for the forfeiture of the corporation's franchise, a proceeding by the Attorney General and not a proceeding by the state.

This is a suit in equity, brought by the complainant, a corporation chartered under the laws of West Virginia, to restrain and inhibit the defendant, in his official capacity as Attorney General of the state of West Virginia, from proceeding to institute an action in the state

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

¶ 3. Federal jurisdiction in suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

courts for the forfeiture of the charter of the complainant for its failure to pay the license tax imposed on it by chapter 35, p. 93, Laws 1901.

It appears from the bill that the Morenci Copper Company is a joint-stock company, incorporated May 29, 1899, under the laws of West Virginia, and having its principal place of business or chief works outside the said state of West Virginia. Its authorized capital was $1,000,000. At the time of its incorporation the franchise or license taxes of corporations were governed by Code W. Va. 1899, c. 32, § 86, which provided that corporations having their principal place of business or chief works within the state should pay a license tax of $10 per annum, and those having such principal place of business without the limits of the state should pay an annual license tax of $50. Further provisions of law made the nonpayment of such license taxes for a certain length of time a cause for forfeiture of the charter of such defaulting corporation. Code W. Va. 1899, c. 32, § 88. On February 18, 1901, the Legislature of West Virginia passed an act amending certain of the legislation applicable to corporations and entitled "An act to provide additional revenue for the state by increasing the license taxes on corporations and joint-stock companies" (Acts 1901, p. 93, c. 35). This act made many and various changes in the laws relating to corporations, but, in so far as this case is concerned, the important features of the act consisted in the amendment of sections 86–92 of chapter 32 of the Code of West Virginia of 1899. These changes, important in the consideration of this case, consisted, in effect, of the following modifications of existing law: (1) Providing that hereafter the amount of license tax of corporations shall be based upon the authorized capital, instead of being a fixed and arbitary sum. (2) Providing process of law for the recovery by the state of unpaid license taxes. (3) Providing more specific methods for the forfeiture of the charters of corporations for failure to pay their license taxes, and the judicial determination of such forfeiture in a suit or proceeding to be instituted by the Attorney General "in the name of the state of West Virginia." Chapter 32, § 90, as amended by Act Feb. 18, 1901, p. 93, c. 35. It is now contended in the bill that this legislation is in violation of the federal constitution in the following particulars: (1) That the said enactment impairs the obligation of the contract evidenced by complainant's charter: (2) that the act denies to complainant the equal protection of the laws.

Cleon Moore, Geo. A. McGlone, Edmund R. Dodge, and Charles J. Faulkner, for plaintiff.

Romeo H. Freer, Atty. Gen., in pro. per.

KELLER, District Judge (after making the foregoing statement). In order that we may have clearly before us the claims of complainant, let us look at the material conditions as they existed when complainant received its charter, and as they exist under the present legislation. First, then, we have, in the Constitution of West Virginia, the following provisions: Article 10, § 1: "Taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained by law. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value; but property used for educational, literary, scientific, religious or charitable purposes; all cemeteries and public property may, by law, be exempted from taxation. The Legislature shall have power to tax by uniform and equal laws, all privileges and franchises of persons and corporations." Article 11, § 1: "The Legislature shall provide for the organization of all corporations hereafter to be created, by general laws uniform as to the class to which they relate; but no corporation shall be created by special law." At the time complainant received its charter,

corporations having their chief works within the state were required to pay an annual license tax of $10, while those having their chief works without the state (to which class complainant belonged) were required to pay an annual license tax of $50. We thus see that even at this time a distinction was made between the two classes of domestic corporations known in the act of 1901 as "resident" and "nonresident" corporations, but each class paid an arbitrary license tax, regardless of its capital, volume of business, or any other question; large and small corporations being required to pay the same license tax.

Coming now to the present legislation, we find that, while now, as formerly, a distinction is made between the license tax to be paid by "resident" and "nonresident" corporations, a further classification is made in each class, based upon the amount of the capital authorized by the charter, and this further classification affects as well "resident" as "nonresident" domestic corporations. The act has had the effect of increasing the license tax upon all "resident" domestic corporations except those having a capital of $10,000 or less, and has had the effect of reducing the license tax upon all "nonresident" domestic corporations having a capital of $25,000 or less from $50 to $20. It has left the license tax upon such corporations having a capital of more than $25,000, and not more than $100,000, as it was under the former act; and has increased, by a graduated scale, in accordance with the capital, the license tax on corporations of this class having a capital of more than $100,000. It is claimed in the bill that this legislation violates the Constitution of the United States in a twofold way: First, as impairing the obligation evidenced by the charter of incorporation, into which, it is asserted, the law providing the amount of license tax to be assessed entered, thus violating article 1, § 10, subsec. 1, of the Constitution of the United States; second, as denying to complainant the equal protection of the laws, thus violating, it is claimed, the last clause of the first section of the fourteenth amendment to the Constitution of the United States.

The case now comes before me upon demurrer to the bill, and counsel on both sides have submitted briefs setting forth their several contentions. At the outset I may say that the legislation herein attacked has already received the construction of the Supreme Court of Appeals of the state of West Virginia in the case of Copper Co. v. Scherr, Auditor, 50 W. Va. 533, 40 S. E. 514, and in that case the court held, inter alia, as follows:

"Sections 86 and 87 of chapter 35 of the Acts of the Legislature of 1901 [should be sections 35 and 36], classifying corporations chartered under the laws of this state, and designating those having their principal places of business or chief works outside of the state as nonresident corporations, and imposing upon them a greater license tax than upon those having their principal place of business and chief works within the state, does not, in so classifying them and discriminating, violate section 1 of article 10 of the Constitution of this state, nor clause 1 of section 10 of article 1 of the Constitution of the United States, nor the fourteenth amendment to the Constitution of the United States, and is therefore valid, and the charge of such greater tax upon such nonresident corporations legal."

So far as this interpretation affects the question of the constitutionality of this legislation under the Constitution of the state of West

Virginia, it is conclusive; but, while it is entitled to great respect and weight in the consideration of this court in relation to the federal questions alleged to arise under the bill herein, it is not conclusive as to them, and the court is under the necessity of considering the points raised by the demurrer to the bill independently.

As was said by the Supreme Court of the United States in the case Ex parte Tyler, 149 U. S. 187, 13 Sup. Ct. 791, 37 L. Ed. 697:

"The courts of the United States have always recognized the importance of leaving the powers of the state in respect to taxation unimpaired. Where the questions involved arise under the state Constitution and laws, the decisions of the highest tribunal are accepted as controlling. Where the Constitution and laws of the United States are drawn in question, the courts of the United States must determine the controversy for themselves."

The points raised by the defendant's demurrer are as follows: First. The bill fails to state a case which entitles the plaintiff to the relief sought. Second. This court has no jurisdiction of the bill. Third. The act of the Legislature in question is not in violation of any provision of the Constitution of the United States.

The bill in this case is designed to enjoin the defendant, as attorney general, from instituting any suit or proceeding in the name of the state of West Virginia for the forfeiture, by judicial determination, of complainant's charter. It appears by the bill that no license tax whatever has been paid by the complainant for the years 1901 and 1902, and it is contended that, until such tax as is due, or the court can clearly see ought to be paid, has in fact been paid or tendered without demanding a receipt in full, a court of equity will not grant an injunction to prevent the collection of taxes, and by a parity of reasoning will not interfere to prevent a decree of forfeiture. The sole allegation made by complainant is the illegality of the increase in its license tax made by the act of 1901, and with this is coupled the admission that no part of the tax assessed under that act has been paid or tendered. I am inclined to think that the payment (or at least the tender to the proper officer, and his refusal) of the amount of tax admitted to be due is a prerequisite to the right to an injunction to restrain judicial proceedings looking to a forfeiture of the charter for nonpayment of the tax assessed, and that such payment or tender and refusal must be alleged in the bill. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Copper Company v. Scherr, 50 W. Va. 533, 40 S. E. 514. However, I do not care to rest this decision upon this point alone, as in such case the complainant might be induced by such a ruling to pay or tender the tax admitted by it to be due, and then again bring a suit for the purpose of enjoining the Attorney General from proceeding with his suit.

The second point raised by the demurrer is that this court has no jurisdiction of the case, because it is, in effect, a suit against the state of West Virginia, and therefore in violation of section 35, art. 6, of the Constitution of the state of West Virginia, which provides: "The state of West Virginia shall never be made defendant in any court of law or equity." Article 11 of the amendments to the Constitution of the United States provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." This amendment was added to the Constitution as qualifying the jurisdiction conferred by section 2 of article 3 of the Constitution, but it is equally true that no suit can be brought in the United States courts against a sovereign state by one of its own citizens without its consent. Fitts v. McGhee, 172 U. S. 524, 19 Sup. Ct. 272, 43 L. Ed. 539, 540, where the court says:

"Is this a suit against the state of Alabama? It is true that the eleventh amendment of the Constitution of the United States does not, in terms, declare that the judicial power of the United States shall not extend to suits against a state by citizens of such state. But it has been adjudged by this court upon full consideration that a suit against a state by one of its own citizens, the state not having consented to be sued, was unknown to and forbidden by the law, as much so as suits against a state by citizens of another state of the Union, or by citizens or subjects of foreign states. Hans v. Louisiana, 134 U. S. 1, 10, 15, 10 Sup. Ct. 504, 33 L. Ed. 842, 845, 847; North Carolina v. Temple, 134 U. S. 22, 10 Sup. Ct. 509, 33 L. Ed. 849. It is therefore an immaterial circumstance in the present case that the plaintiffs do not appear to be citizens of another state than Alabama, and may be citizens of that state."

If, therefore, this suit is, in effect, a suit against the state of West Virginia, the point made on demurrer is well taken, and the suit must be dismissed.

In Osborn v. Bank of U. S., 9 Wheat. 738, 857, 6 L. Ed. 204, 232, Chief Justice Marshall, delivering the opinion of the court, said:

"It may, we think, be laid down as a rule which admits of no exception that in all cases where jurisdiction depends on the party it is the party named in the record. Consequently the eleventh amendment, which restrains the jurisdiction granted by the Constitution over suits against states, is, of necessity, limited to those suits in which a state is a party to the record. The amendment has its full effect if the Constitution be construed as it would have been construed had the jurisdiction of the court never been extended to suits brought against a state by citizens of another state or by aliens."

But, as pointed out by Mr. Justice Matthews in Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. p. 223, what was said by the chief justice in the case just referred to must be taken in connection with its immediate context, wherein he adds (page 858, 9 Wheat., 6 L. Ed. 232):

"The state not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendants—whether they are to be considered as having a real interest, or as being only nominal parties."

"This," says Mr. Justice Matthews in the Ayers Case, "conveys the intimation that where the defendants, who are sued as officers of the state, have not a real, but merely a nominal, interest in the controversy, the state appearing to be the real defendant, and therefore an indispensable party, if the jurisdiction does not fail for want of power over the parties it does fail, as to the nominal defendants, for want of a suitable subject-matter."

And in a later case—The Governor of Georgia, Claimant, Appellant, v. Juan Madraz, 1 Pet. 110, 7 L. Ed. 73, 79—Chief Justice Mar-

shall, after referring to the rule laid down in Osborn v. Bank of U. S., supra, said:

"The claim upon the Governor is as a governor. He is sued, not by his name, but by his title. The demand made upon him is not made personally, but officially. The decree is pronounced, not against the person, but the officer, and appeared to have been pronounced against the successor of the original defendant, as the appeal bond was executed by a different governor from him who filed the information. In such a case, where the chief magistrate of a state is sued, not by his name, but by his style of office, and the claim made upon him is entirely in his official character, we think the state itself may be considered as a party on the record."

In Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, 29 L. Ed. 805, the nominal defendants were the Treasurer of the State of South Carolina, its Comptroller General, and the treasurers of its various counties, and their successors in office. The object of the bills was to obtain the redemption of certain scrip of which complainants were holders, in accordance with the terms of a statute in pursuance of which it had been issued, by the levy, collection, and appropriation of a special tax pledged to that purpose, as they claimed, by an irrepealable law, constituting a contract protected from violation by the Constitution of the United States. The decrees of the Circuit Court granting the relief prayed for were reversed and the bills dismissed on the ground that the suits, though nominally against the state officers, were really against the state itself.

In Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 223, a petition was filed in the Supreme Court for a writ of habeas corpus discharging petitioner from the custody of the marshal of the Eastern District of Virginia. A suit had been brought in the Circuit Court of that district in the name of Cooper et al. v. Marye et al., the object of which was to restrain certain officers of the state of Virginia from instituting suits for the collection of taxes under the provisions of a certain act passed May 12, 1887, and the Circuit Court issued its restraining order, notwithstanding which Ayers, who was attorney general, proceeded to institute a suit against the Baltimore & Ohio Railroad Company. For doing so he was attached for contempt, and, upon answer, adjudged guilty of the contempt, and fined $500 for his contempt, and committed to the custody of the marshal of the court until the fine was paid, and until he should purge himself of his contempt by dismissing the said suit. The petition for writ of habeas corpus was granted, and the petitioner discharged, and the court held:

"A suit by aliens, the object of which is to enjoin the Attorney General and the commonwealth's attorneys of the several counties, cities, and towns of Virginia from bringing any suit in the name of the commonwealth to enforce the collection of taxes for the payment of which coupons originally attached to her bonds had been tendered, is a suit which the Circuit Court of the United States has no jurisdiction to entertain. Such suit is in law and fact a suit by subjects of a foreign state against the state of Virginia, and within the prohibition of the eleventh amendment to the Constitution.

"(2) The orders, in such suit, of the circuit court, forbidding the officers of the commonwealth charged with the supervision and management of legal proceedings in her behalf to bring such suits in her name, and the orders of such court adjudging them in contempt for bringing such suits were void, and their imprisonment under such orders, is without authority of law. * * *"

"(4) Whether a suit is within the prohibition of the eleventh amendment is not always determined by reference to the nominal parties on the record, but by a consideration of the nature of the case.

"(5) For a breach of its contract by the state there is no remedy by a suit against the state itself; and a bill the object of which is by injunction indirectly to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, is a suit against the state.

"(6) In such a case, though the state be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of its contract, the suit is still in substance, though not in form, a suit against the state.

"(7) Suits are justifiable against individual defendants, who, under color of the authority of unconstitutional legislation by the state, are guilty of personal trespasses and wrongs; and against officers in their official capacity, either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial."

The opinion in the above case is very full and elaborate, and I have come to the conclusion that in almost every aspect the original suit in the Circuit Court was a counterpart of this. In that case, as in this, the suits to be brought by the state officials who were sought to be restrained were required to be brought "in the name of the state," and this fact is adverted to in the opinion. 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 225, Mr. Justice Field, in his concurring opinion, remarks (123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 230):

"The object of that suit [Cooper v. Marye] was to enjoin the Attorney General and the commonwealth's attorneys of the several counties, cities, and towns of Virginia from bringing any suits in the name of the commonwealth to enforce the collection of taxes, for the payment of which coupons originally attached to her bonds had been tendered. To enjoin the officers of the commonwealth charged with the supervision and management of legal proceedings in her behalf from bringing suits in her name is nothing less than to enjoin the commonwealth, for only by her officers can such suits be instituted and prosecuted. This seems to me an obvious conclusion."

See also Fitts v. McGhee, 19 Sup. Ct. 269, 172 U. S. 528, 43 L. Ed. 541, where it is said, quoting from U. S. v. Lee, 1 Sup. Ct. 240, 106 U. S. 196, 27 L. Ed. 171:

"To secure the manifest purposes of the constitutional exemption guarantied by the eleventh amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is nevertheless the only real party against which alone in fact the relief is asked, and against which the judgment or decree effectively operates."

Following what I conceive to be not only the binding decisions of the federal court of last resort, but the well-considered and expressed expositions of the limits of federal jurisdiction provided by the Constitution, I come to the conclusion that the Circuit Court has not jurisdiction of this case.

But it may be said, if the court holds that no remedy of this sort will lie in the Circuit Court of the United States to prevent this breach of a contract by the state of West Virginia by means of the machinery

of a law violative of the Constitution of the United States, how are the rights of corporations to be preserved? The answer is that such alleged unconstitutionality is matter of defense to any suit brought for the forfeiture of complainant's charter, and could be set up as an answer and defense to any bill brought for that purpose, and, if the highest court of the state ruled adversely to that contention, appeal would lie to the Supreme Court of the United States. Or the case can be removed to the Circuit Court of the United States if it presents a case arising under the Constitution or laws of the United States.

Counsel in argument seek to distinguish this case from others wherein it was held that suits against officers of a state were in fact suits against the state by asserting that the suit threatened by the Attorney General, and which he is commanded by section 38 of chapter 35, p. 116, of the Acts of West Virginia of 1901, to bring against the corporation for the forfeiture of its charter, is one in which the Attorney General has an interest to the extent of a fee of $25 to be taxed in the costs. I do not understand this to be the fact. As I read the statute, it provides for a fee of $25 to the Attorney General in cases where such suit or proceeding is stopped by the corporation coming in and paying the tax or penalty; and it is especially provided that in no case shall such fee be paid by the state. So that, if the suit goes on to forfeiture, the Attorney General gets no fee, unless, indeed, it can be collected in another suit which he is authorized to bring for the appointment of a receiver, etc. See section 38, c. 35, p. 116, Acts W. Va. 1901.

The question as to whether the legislation referred to increasing the license taxes of corporations is violative of the Constitution of the United States, I do not think it necessary to decide at this time.

My present decision, if correct, will effectually dispose of this case, and, as the jurisdictional question necessarily arises first, and is conclusive, I regard it as premature to now declare what my views might be upon merits of the contention of plaintiff if the case were properly before me—a contingency that might happen if a corporation defendant, sued under the West Virginia statute for a forfeiture of its charter, were to remove the case to this court. I therefore reserve the decision of that question until it shall arise in a case over which I shall have jurisdiction.

An order may go dismissing the bill, with costs, for want of jurisdiction.