GRAND TRUNK WESTERN RY. CO. v. CURRY, Secretary of State of California.

(Circuit Court, N. D. California. June 15, 1908.)

No. 14,610.

COURTS — JURISDICTION OF FEDERAL COURTS — SUIT AGAINST STATE — EQUITY JURISDICTION.

The California statute imposing a license tax on corporations (St. 1905, p. 493, c. 386, as amended by St. 1906, p. 22, c. 19, and St. 1907, p. 664, c. 347) provides that every domestic corporation and foreign corporation doing business in the state shall pay an annual license tax based on its

capital stock to the Secretary of State by the 1st day of July each year. It is made the duty of the Secretary on or before September 15th to report those corporations which are delinquent to the Governor, who shall thereupon issue a proclamation declaring that, unless such corporations pay the tax and penalty by November 30th, their charters or right to do business in the state as the case may be shall be forfeited. It is then provided that it shall be unlawful for any such delinquent corporations to do business in the state after that date, and that any violation of such provision shall be a misdemeanor. It is made the further duty of the Secretary of State on December 31st each year to send a list of such delinquent corporations to each county clerk, who shall place it on file. Complainant filed a bill in a federal court against the Secretary of State, as an officer and individually, alleging that it was a foreign railroad corporation, but that it was not doing business in California within the meaning of such statute, although it maintained agents there to solicit business in interstate commerce; that, if the statute be construed to apply to complainant, it was unconstitutional and void; that defendant had reported complainant delinquent thereunder, and claimed and contended that it was subject to such tax, and threatened to enforce the statute against it. The bill prayed for an injunction against defendant and a judicial construction of the statute. *Held*, that it did not state a cause of action for any relief in equity or within the jurisdiction of the court, since defendant was charged with no duty in enforcing the law, and had already performed all acts required of him thereunder, except filing lists with the county clerks, which did not affect complainant's liability or status.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 814, 844½.

Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

## In Equity.   On demurrer to bill.

By its bill herein complainant seeks an injunction to restrain the enforcement as against it of the provisions of an act of the Legislature of the state of California entitled "An act relating to revenue and taxation, providing for a license tax upon corporations," etc., approved March 20. 1905 (St. Cal. 1905, p. 493, c. 386). This act, as amended (St. Cal. 1906, p. 22, c. 19; Id. 1907, p. 664, c. 347), imposes an annual license tax, graduated upon a basis of capital stock, on every corporation, domestic and foreign (other than religious, educational, and scientific, and corporations not organized for profit), "now doing business, or which shall hereafter engage in business in this state." It provides (section 2) that the "license tax or fee shall be due and payable on the first day of July of each and every year, to the Secretary of State, who shall pay the same into the state treasury. If not paid on or before the hour of four o'clock p. m. of the first day of September next thereafter, the same shall become delinquent and there shall be added thereto, as a penalty for such delinquency, the sum of ten dollars." It is made the duty of the Secretary of State (section 3) to report to the Governor on or before the 15th day of September in each year a list of all corporations which have become delinquent in the payment of the tax, and the Governor is thereupon required forthwith to issue his proclamation declaring "that the charters of such delinquent domestic corporations will be forfeited and the right of such foreign corporations to do business in this state will be forfeited." unless payment of the tax with penalty for delinquency be made to the Secretary of State on or before the hour of 4 o'clock p. m. of the 30th day of November following. This proclamation is required (section 4) to be filed immediately in the office of the Secretary of State, and the latter must immediately on its receipt cause a copy thereof to be published as in the act required. It is then provided (section 5) that "at the hour of four o'clock p. m. of the thirtieth day of November each year, the charters of all delinquent domestic corporations which have failed to pay the said license tax. together with the penalty for such delinquency, shall be forfeited to the state of California, and the right of all delinquent foreign corporations to do business in this state, which have failed to pay such license tax, together with the penalty for such delinquency, shall be like-

wise forfeited." The Secretary of State is required (section 8) on or before the 31st day of December of each year, to certify a list of all domestic corporations whose charters have been forfeited, and of all foreign corporations whose rights to do business in the state have been so forfeited, to each county clerk in the state, who must file the same in his office. By section 9 it is provided: "It shall be unlawful for any corporation, delinquent under this act, either domestic or foreign, which has not paid the license tax or fee, together with the penalty for such delinquency, as in this act prescribed, to exercise the powers of such corporation or to transact any business in this state, after the thirtieth day of November next following the delinquency. Each and every person who exercises any of the powers of a corporation so delinquent, either domestic or foreign, which has not paid the license tax, together with the penalty for such delinquency, or who transacts any business for or on behalf of any such corporation, after the thirtieth day of November next following the delinquency, shall be guilty of a misdemeanor, and, upon conviction thereof shall be punished by a fine of not less than one hundred dollars and not exceeding one thousand dollars, or by imprisonment in the county jail not less than fifty days nor more than five hundred days, or by both such fine and imprisonment." This covers all features of the act in any wise involved in the questions raised by the bill, and all ministerial or executive steps required at the hands of the defendant or any other officer looking to its enforcement.

By the amended bill, which was filed December 21, 1907, it is alleged, in substance, so far as the matter therein is material, that complainant is a consolidated railroad corporation organized and existing under the laws of the states of Michigan and Indiana, having its principal office in the city of Detroit; that continuously since its organization it has been and is now engaged as a common carrier of freight and passengers in the carrying on of interstate commerce over its lines extending from their western terminus at the city of Chicago easterly through various states of the Union and the Dominion of Canada, to Boston, Mass.; that it neither owns nor operates a railroad west of Chicago, but that it receives at the latter point and other points east of there on its system, from other roads, both freight and passengers, which it transports over its lines to various points east, and likewise receives such traffic at eastern points for transportation west over its system. It is alleged that complainant is not engaged in any local or intrastate business in the state of California, but does employ agents throughout the state to solicit traffic therein for routing over its lines on its arrival over other roads at said city of Chicago and other points of receipt; that such agents issue no bills of lading for freight, nor do they receive payments on account of transportation, but simply make contracts securing the routing of such business over complainant's lines, and it is alleged that the solicitation of such business in the state of California, as aforesaid, does not constitute "doing business" therein, within the meaning of the statute in question, but constitutes merely a part of complainant's business of carrying on interstate commerce; and that, if such act is interpreted to preclude the solicitation of such traffic without the payment of such license or tax, it will constitute the imposition by the state of California of a burden upon interstate commerce, which will render the said act "wholly null and void," as repugnant to the Constitution and laws of the United States. It is alleged that the amount of license or tax complainant would be compelled to pay under the act is $250, and that it is "claimed and contended" by the defendant Curry as such Secretary of State; that complainant is liable to pay said tax; that the officers of the state of California having in charge the enforcement of the act have taken all the necessary preliminary steps as required by the act toward enforcing the same; and that the name of complainant has been included by the defendant in the list of delinquents furnished by him to the Governor and by the latter included in his proclamation; and that if complainant "attempts to exercise its constitutional right to solicit, or have its agent or agents solicit interstate commerce in the state of California, in the manner and for the purposes aforesaid, without the payment of said license tax and penalty imposed upon the solicitation or doing of such interstate business, said Curry, acting as the Secretary of State, but so acting under said void law, will proceed to enforce the proclamation of the Governor as aforesaid by interpreting and construing sections

2 and 9 of the California acts heretofore quoted to mean and include your orator, and * * * will attempt to declare that orator has forfeited its rights under said California act and by force of the proclamation of the Governor as aforesaid to solicit through its agents or agent, in the state of California, interstate commerce, and will proceed to impose the said fines, and to otherwise prohibit orator from exercising its federal constitutional right to engage in interstate business in the said state of California by soliciting such interstate business in the manner and for the purpose aforesaid."

Finally it is alleged that complainant's purpose in instituting the suit is "to obtain a judicial determination by a court having competent jurisdiction over the subject-matter and the parties as to whether said California statutes and provisions can be so interpreted and construed by the law enforcing authorities of California so as to include within their provisions, prohibitions, and penalties against orator as an interstate common carrier; * * * that said Curry, assuming to be authorized by said void act to enforce the same, threatens and gives out that he will enforce said law and enforce the imposition of said license fee, tax, and penalty against orator to the uttermost, unless he is restrained and enjoined by some court of competent jurisdiction from so doing." In response to an order to show cause why an injunction should not issue, the Attorney General of the state appeared in behalf of defendant, and interposed a demurrer to the bill upon the grounds (1) that it appears from the bill that complainant is not entitled to the relief prayed; (2) that the court has no jurisdiction in the premises; (3) that the bill is wholly without equity.

Kretzinger, Gallagher & Rooney, for complainant.

U. S. Webb, Atty. Gen. of the state of California, for defendant.

VAN FLEET, District Judge (after stating the facts as above). I am strongly of opinion, as contended by the Attorney General, that upon the facts stated in the bill the suit, while not nominally such, is within the principles announced in Fitts v. McGhee, 172 U. S. 516, 529, 19 Sup. Ct. 269, 43 L. Ed. 535, Morenci Copper Co. v. Freer (C. C.) 127 Fed. 199, 203, and Union Trust Co. v. Stearns (C. C.) 119 Fed. 791, to be regarded as, in its legal effect, one against the state, and so not within the judicial power conferred upon the courts of the United States by the Constitution. Const. art. 11, § 1.

It is not necessary, however, to pass definitely upon that question, since I am fully satisfied that the facts alleged do not make a case for the equitable intervention of this court. While the bill proceeds against the defendant, both in his official capacity as Secretary of State and as an individual, nothing is alleged against him in the latter capacity; nor, having in view the terms of the act, can it readily be perceived what of an actionable character could be so alleged that would not as well apply to any other private citizen. All that is alleged is the taking by defendant of the various steps required of him in his official capacity looking to the carrying out of the provisions of the statute, all of which are preliminary to its enforcement, and the fact that he "claims and contends" that the complainant is liable to the tax, that he "will attempt to declare that orator has forfeited its rights" under the act, and "threatens and gives out that he will enforce said law and the imposition of said license fee, tax, and penalty against orator to the uttermost, unless he is restrained and enjoined by some court of competent jurisdiction from so doing."

As to the steps required by the statute to be taken by defendant, it is obvious that as to those already performed equity can afford no relief, since it is not the province of a court of equity to restrain acts

already accomplished. The single act required at defendant's hands which yet remained unperformed at the filing of the amended bill was that of certifying the list of delinquent corporations to the county clerks of the state; and that it is asked that he be restrained from doing. But, in the first place, that step is required to be taken on or before the 31st day of December of each year, and presumptively, there being no restraining order, that act was taken long before the hearing of this application, so that it is now beyond restraint. In the next place, however, it is clear from the terms of the act that that step was not necessary as a jurisdictional prerequisite to proceedings to enforce the act, nor essential to fix the complainant's liability thereunder; and therefore its performance could work no injury that had not been already inflicted. The bill also prays that defendant be enjoined from "demanding of orator said two hundred and fifty dollars as a license tax, or any part thereof, and from demanding the penalty of ten dollars for the nonpayment thereof." But no duty is cast upon defendant to make such demand. In fact, under the terms of the statute, no express demand is required to be made by any one. The act itself makes the demand and fixes the date of delinquency for nonpayment—a date which had elapsed prior to the filing of the bill. Such a demand, therefore, by the defendant, would not only be a wholly unwarranted and unnecessary thing, but could work no possible wrong to complainant.

We have, then, nothing left but defendant's alleged threats to have the statute "enforced" as against complainant. These threats, regarded in the light of the provisions of the statute, are idle and meaningless things, and can work no possible legal injury to complainant. It is quite true that, where an officer is charged with some specific duty looking to the enforcement of a statute alleged to be unconstitutional, the performance of such duty, if not already accomplished, and if one of a nature to injure the complainant, may be enjoined pending the determination of the question of the validity of the statute; but that is not this case. Here the defendant is not charged with any further duty in the premises. He has no more power under the act than any other ministerial officer of the state to see that its provisions are enforced against complainant. It is very evident, indeed, from the terms of the act, that its eventual enforcement was intended by the Legislature to be left to the law officers of the state usually and generally charged with such functions and to be accomplished through the instrumentality of ordinary and proper judicial proceedings in its courts. In this respect, therefore, the case is clearly within the principles of Fitts v. McGhee, above referred to, where, speaking of the class of cases relied upon here by complainant, it is said:

"Upon examination, it will be found that the defendants in each of those cases were officers of the state, especially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which, it was averred, they were committing or about to commit some specific wrong or trespass to the injury of plaintiff's rights. There is a wide difference between a suit against individuals holding official positions under a state to prevent them, under sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in

the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute by an injunction suit brought against them, then the constitutionality of every act passed by the Legislature could be tested by a suit against the Governor and Attorney General, based upon the theory that the former as the executive of the state was in a general sense charged with the execution of all its laws, and the latter, as the Attorney General, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."

Here the statute in question is not even alleged to be positively unconstitutional, but only that it will be "if so construed" as to make complainant liable for the tax imposed thereby under the facts alleged. No presumption can be indulged that it will be so construed by the state tribunals, if such construction would render it obnoxious to the Constitution or laws of the United States. The obligation to sustain and uphold that Constitution and the laws enacted thereunder rests as solemnly and is as obligatory upon the courts of the state as upon those of the United States, and the presumption must always be that this obligation will be observed. There is, therefore, absolutely nothing of substance in the bill tending to show that complainant is threatened with any wrong at the hands of the defendant Curry calling for the interposition of a court of equity. Should the state attempt to enforce the act against it, it will necessarily be by civil action to collect the tax, or by a prosecution under the penal clause, and such proceedings can only be had under the forms of law and by some appropriate judicial process; and, when that is attempted, there will be no difficulty to complainant in invoking and securing the protection of the Constitution and laws of the United States. Thus far it does not appear to be in need of that protection.

The demurrer will be sustained, the application for an injunction denied, and the bill dismissed.