IRMA HAT CO. v. LOCAL RETAIL CODE AUTHORITY FOR CHICAGO, Inc., et al.

No. 13881.

District Court, N. D. Illinois, E. D.

July 31, 1934.

Wilhartz, Hirsch & Schanfarber, Samuel E. Hirsch, and Julian H. Levi, all of Chicago, Ill., for plaintiff.

Kelly, Pratt & Zeiss and Harry Eugene Kelly, all of Chicago, Ill., and Burton A. Zorn, of New York City (Le Roy W. C. Mather, Asst. Counsel, N. R. A., of Washington, D. C., and Austin Hall, Asst. U. S. Atty., of Chicago, Ill., of counsel), for Local Retail Code Authority Elmer F. Wieboldt, Walter A. Knoop, and Roscoe R. Rau.

Fischel, Kahn, Heart & Epstein, of Chicago, Ill., for G. B. Stockton and E. M. Schnadig.

Lederer, Livingston, Kahn & Adler, of Chicago, Ill., for D. M. Nelson.

BARNES, District Judge.

This cause comes on to be heard on the motion of the plaintiff for a preliminary injunction restraining the enforcement as against it of certain provisions of the Code of Unfair Competition for the Retail Trade and on the motion of certain of the defendants to dismiss the bill of complaint for the reasons (as stated in their brief somewhat more narrowly than in their formal motion) that the complaint does not state facts showing that the plaintiff is threatened with irreparable injury, and that the complaint is defective for want of necessary and indispensable parties defendant.

The court has considered the arguments of counsel on the motion to dismiss and is of the opinion that said motion should be denied.

The court is strongly inclined to the opinion that the National Industrial Recovery Act (48 Stat. 195) is an unconstitutional and invalid delegation of legislative power to the President, but because of lack of precedent and opportunity for conference refrains from so holding.

The plaintiff is engaged in the business of selling millinery at retail. It is alleged in the bill of complaint and not denied: "That all of the sales made by the plaintiff in its business are consummated on its premises for cash, and that the plaintiff does not receive any orders or make any sales whatsoever through the United States mail either from within or from without the State of Illinois; that the scope of plaintiff's business and any and all of its sales made therein lie entirely within the City of Chicago and the village of Oak Park, State of Illinois, as aforesaid."

Accordingly, it will be assumed for the purpose of the motion under consideration that all of plaintiff's sales are transactions in intrastate commerce.

It was admitted on the hearing that the plaintiff purchases three-fourths of its merchandise outside of the state of Illinois. Accordingly, it will be assumed for the purpose of the motion under consideration that plaintiff's purchases are made partly in intrastate commerce and partly in interstate commerce.

The Retail Code provides:

Article I:

Section 1. "The provisions of this Code \* \* \* shall apply to all retailers and/or retail establishments engaged in the retail trade. \* \*. \* "

Article II:

Section 1. "The term 'retail trade' as used herein shall mean all selling of merchandise to the consumer and not for purposes of resale in any form. \* \* \*

Section 2. "The term 'retailer' as used herein shall mean any individual or organization engaged wholly or partially in the retail trade."

Article III fixes the effective date of the code.

Article IV provides for collective bargaining by employees of retailers, and prohibits the employment of child labor by retailers.

Article V fixes "store hours" and hours of labor for employees of retailers.

Article VI fixes minimum rates of wages for employees of retailers.

Article VII fixes limitations upon price increases by retailers.

Article VIII prohibits the use of the so-called "loss leaders" by retailers.

Article IX:

Section 1 prohibits certain advertising and selling methods.

Section 2. *"N. R. A. label.*—No retailer shall purchase, sell, or exchange any merchandise manufactured under a Code of Fair Competition which requires such merchandise to bear an N. R. A. label, unless said merchandise bears such label. Any retailer rightfully possessing the insignia of the N. R. A. who has in stock or purchases similar merchandise which has been manufactured before the effective date of the Code of Fair Competition requiring such merchandise to bear an N. R. A. label may attach thereto the N. R. A. insignia."

Section 3 provides that, except as therein permitted, "no retailer shall knowingly buy or contract to buy any merchandise produced in whole or in part in a penal, reformatory, or correctional institution" or "knowingly sell or offer for sale such merchandise."

Article X provides for the setting up of machinery for the administering of the code, and includes:

"Section 2. \* \* \*

"(b) *General powers.*—The National Retail Trade Council shall, in addition to the specific powers herein conferred, have all general powers necessary to assist the Administrator or his Deputy in the administration and enforcement of this Code.

"(c) *Reports and investigations.*—The National Retail Trade Council shall, subject to the approval or upon the request of the Administrator, require from all retailers such reports as are necessary to effectuate the purposes of this Code, and may, upon its own initiative or upon complaint of any person affected, make investigation as to the functioning and observance of any provisions of the Code and report the results of such investigation to the Administrator.

"(d) *Recommendations.*—The National Retail Trade Council may from time to time present to the Administrator recommendations (including interpretations) based on conditions in the trade, which will tend to effectuate the operation of the provisions of this Code and the Policy of the National Industrial Recovery Act. Such recommendations shall, upon approval by the Administrator, become operative as part of this Code.

"(e) *Local Committees.*—The National Retail Trade Council shall, subject to the approval of the Administrator, supervise the setting up, within local trading areas, of local committees for the purpose of assisting in the administration and enforcement of this Code within such local areas.

"(f) *Expenses.*—The expenses of the National Retail Trade Council shall be equitably assessed and collected by the Council, subject to the approval of the Administrator."

Article XI contains some general provisions, not material here.

The only provision in the Constitution of the United States that, in this or other cases in this court, seriously has been said to authorize the enactment of the National Industrial Recovery Act and the promulgation of codes thereunder, is the commerce clause thereof (Article 1, § 8, cl. 3). That clause, of course, authorizes said act and codes only to the extent that they regulate interstate and foreign commerce. To the extent that said act and codes attempt to regulate intrastate commerce, they are unauthorized and void.

The only sections of the Retail Code that purport to regulate a retailer's purchases are sections 2 and 3 of article IX. These two sections are the only sections that purport to regulate activities which, on the facts of the case at bar, may be interstate activities.

It should be stated that it is not contended that the plaintiff buys or sells prison-made goods, and the plaintiff does not complain of section 3 of article IX. Accordingly, the validity of that section is not in issue in this case.

The plaintiff does complain bitterly of the application of section 2 of article IX to its business and of the requirements of article X, section 2 (c) and (f), in respect of reports, investigations, and expenses.

Section 2 of article IX of the Retail Code, relating to the "N. R. A. Label," cannot be understood without a detailed examination of the Millinery Code.

The Millinery Code provides:

Article I provides that the purpose of the code is to effectuate the policies of Title I of the National Industrial Recovery Act.

Article II:

"1. The term 'industry' as used herein includes the manufacture of millinery as hereinafter defined, and such related branches or subdivisions as may from time to time be included by the President under the provisions of this Code.

"2. The term 'millinery' as used herein shall include all ladies' and misses' headwear, whether trimmed or untrimmed, except that it shall not include so-called 'harvest hats.'

"3. The term 'employee' as used herein includes anyone engaged in the industry in any capacity receiving compensation for his services, irrespective of the nature or method of payment of such compensation.

"4. The term 'employer' as used herein shall include every individual, partnership, association, trust, corporation, or other form of enterprise engaged as employer in the manufacture of millinery, as hereinabove defined, and shall include all employers who are engaged in any other industry or in general retail business to the extent that they manufacture millinery as part of their business.

"5. The term 'member of the industry' includes anyone engaged in the industry either as an employer or on his own behalf."

Article III fixes hours of labor for employees in the manufacture of millinery.

Article IV fixes minimum wages for employees in the manufacture of millinery.

Article V prohibits the employment of child labor in the manufacture of millinery, provides for collective bargaining by employees, and prohibits employees being required to join company unions, etc.

Article VI relates to matters of administration of the Code.

Article VII: "N. R. A. Label."

"1. All millinery manufactured subject to the provisions of this Code shall bear an NRA label or an authorized substitute therefor to symbolize to purchasers of said millinery the conditions under which said millinery has been manufactured.

"2. Under the powers vested in the Administrator by Executive Order of October 14, 1933, and under grant of the necessary authority by him, the Code Authority shall have the exclusive right in this industry to issue and furnish said labels to the members thereof.

"3. Each label shall bear a registration number especially assigned to each member of the industry by the Code Authority, and shall remain attached to all such millinery when sold to the retail distributor.

"4. Any and all members of the industry may apply to the Code Authority for a permit to use such NRA label, which permit to use the label shall be granted to them, but only if and so long as they comply with this Code.

"5. Subject to the approval of the Administrator, the Code Authority shall establish rules and regulations and appropriate machinery for the issuance of labels and the inspection, examination and supervision of the practices of members of the industry using such labels for the purposes of ascertaining the right of such members of the industry to the continued use of said labels; of protecting purchasers in relying on said labels; and of insuring to each individual member of the industry that the symbolism of said label will be maintained by virtue of compliance with the provisions of this Code by all other members of the industry using said label.

"6. The charge made for such labels by the Code Authority shall at all times be subject to supervision and orders of the Administrator and shall be not more than an amount necessary to cover the actual reasonable cost thereof, including actual printing, distribution, administration, and supervision of the use thereof as hereinabove set forth."

Article VIII prohibits certain trade practices, such as inaccurate advertising, false billing, inaccurate labeling, inaccurate references to competitors, threats of lawsuits, secret rebates, selling on consignment, etc.

Articles IX, X, XI, and XII relate to matters not material here.

The only sections of the Millinery Code that purport to regulate matters other than manufacturing of millinery are some of the sections of article VIII relating to trade practices. These are the only sections that purport to regulate activities which may be interstate activities.

It may be observed that the principal purpose of the Retail Code is to regulate "retail trade," which, in the case of the plaintiff, is wholly intrastate commerce, and that all other purposes of that code seem to be merely incidental. It may also be observed that the principal purpose of the Millinery Code is to regulate "the manufacture of millinery," which is not commerce of any kind, either intrastate or interstate, and that all other purposes expressed therein appear to be incidental.

If all of the provisions of these two codes are held to be constitutional and valid, and if they are held to apply to all of the activities of the plaintiff and to all of the manufacturers of millinery from whom the plaintiff buys its hats, the result will be that the federal government will be regulating retail activities of the plaintiff and wholesale activities of the plaintiff and manufacturers of millinery which are wholly intrastate commerce— if they are commerce at all—and, furthermore, will be regulating manufacture, which has never been held to be commerce of any kind.

Apparently the theory upon which the two codes in question were drafted was that, if a few relatively unimportant (to the industry) regulations, which could apply to interstate activity, were inextricably mixed with a large number of relatively important (to the industry) regulations, which could not apply to interstate activity but did apply to intrastate activity, the resultant mass would all be valid constitutional federal legislation. One of the means of this inextricable mixing is the N. R. A. label.

█ The court is of the opinion that the rule of decision in this case may be stated somewhat as follows: The plaintiff is entitled to carry on its intrastate activities without interference by the defendants, and to carry on its interstate activities with others without regard to whether those others do or do not carry on their intrastate activities in accordance with some code.

The plaintiff contends that the provisions of the codes in question and of the rules and regulations issued by the Administrator of the National Industrial Recovery Act relating to the N. R. A. label, and those provisions of the rules and regulations of the Administrator relating to the "public" withdrawal of the N. R. A. insignia, are intended to operate as a threat of a boycott, and that, if enforced, will operate as a boycott. The court is of the opinion that there is force in this contention.

█ If the court passes over the question as to whether or not the National Industrial Recovery Act is an unconstitutional delegation of legislative power, which question is, as the court has heretofore stated, a very serious one, it may be that some provisions of the Retail Code and some provisions of the Millinery Code are valid exercises of the federal power over interstate commerce, but those provisions are, as the court has observed, mainly incidental to other purposes which, in the opinion of the court, are wholly beyond the power of the federal government. The reports and investigations provided for by article X, section 2 (c), of the Retail Code, and the provisions relating to the N. R. A. label, found in article IX, section 2, of the Retail Code, are not limited in their operation to those matters which the federal government may regulate, and to the extent that they exceed the power of the federal government in that regard they are unconstitutional and void.

In the opinion of the court, the plaintiff is, at this stage of the proceeding, entitled to a preliminary injunction restraining the defendants from requiring the plaintiff to make reports concerning any of the activities of the plaintiff other than those in interstate commerce, and, on the facts, only a portion of the plaintiff's purchases and none of its sales occur in interstate commerce; restraining the defendants from making investigations as to the functioning and observance of any provisions of the Retail Code by the plaintiff, except as that code applies to such activities of the plaintiff as constitute interstate commerce, namely, interstate purchases; restraining the defendants from making public announcement of the withdrawal of the N. R. A. insignia from the plaintiff, and from making public announcement that the plaintiff is not complying with the National Industrial Recovery Act; and restraining the enforcement as against it of section 2 of article IX of the Retail Code, relating to the N. R. A. label.