## UNITED STATES et al. v. GREENWOOD DAIRY FARMS, Inc.
### No. 1575.

District Court, S. D. Indiana, Indianapolis Division.

Sept. 27, 1934.

Val Nolan, U. S. Atty., of Indianapolis, Ind., for plaintiffs.

Smith, Remster, Hornbrook & Smith, of Indianapolis, Ind., for defendant.

BALTZELL, District Judge.

This is an action in which the plaintiffs are seeking to enjoin the defendant from selling, marketing, transporting, or in any other manner handling milk or cream for consumption in the "Indianapolis Sales Area," as defined and described in a license theretofore issued. The defendant, in addition to filing an answer to the bill, has also filed a counterclaim in which it is seeking to enjoin the plaintiffs from enforcing or attempting to enforce the terms and provisions of the act of Congress, known as the "Agricultural Adjustment Act" (7 USCA § 601 et seq.), and the license issued pursuant thereto, as against it. A preliminary injunction is sought by the plaintiffs in their bill of complaint, and by the defendant in its counterclaim. A hearing was had upon the petition of each for a preliminary injunction. Since the hearing, however, the parties have filed a written stipulation, in which it is agreed that the evidence introduced at such hearing may be considered by the court as upon a final hearing, and that the case may be disposed of at this time as upon final hearing, both as to the bill of complaint and as to the counterclaim.

Pursuant to Equity Rule 70½ (28 USCA § 723), special findings of fact and conclusions of law have been filed in this case; however, a brief statement of such facts is deemed advisable for the purposes of this opinion.

The defendant is a corporation organized and existing under and by virtue of the laws of the state of Indiana, with its principal place of business in Greenwood, a small town in Johnson county, Ind., which county lies immediately south of, and adjacent to, Marion county, Ind. Pursuant to section 8 (3) of what is known as the "Agricultural Adjustment Act" (7 USCA § 608 (3), the plaintiff Henry A. Wallace, as Secretary of Agriculture (hereinafter referred to as the "Secretary"), issued a "License for Milk, Indianapolis Sales Ares," effective April 1, 1934. Such license defined the boundary line of the "Indianapolis Sales Ares" as being Marion county, Ind. By its terms such license applies to all persons engaged in the business of distributing, marketing, or in any manner handling whole milk or cream for ultimate consumption in such area, who (1) pasteurize, bottle, or process milk or cream, (2) distribute milk or cream at wholesale or retail to hotels, restaurants, stores, or other establishments for consumption on the premises or for resale or to the consumers, (3) operate stores or other establishments selling milk or cream at retail for consumption off the premises, (4) purchase, market, or handle milk or cream for resale in such area. All such persons are designated as "distributors." The defendant was classified by the Secretary as a "distributor," and was mailed a license authorizing it to distribute milk in the "Indianapolis Sales Area," subject to the terms and conditions contained in such license. The defendant, however, made no application to the Secretary or any other person for a license. A Market Administrator had theretofore been designated by the Secretary, with whom each distributor is required to file a bond. Each distributor is also required to file a report with such Administrator at certain specified times, which report is to contain the names of the individuals from whom the milk is purchased, the quantities purchased from each, the quantities sold by the distributor, the uses to which it is put, etc. The defendant refused to comply with the terms and conditions of the license, especially with those requiring such reports, and refused further to make payment of adjustments, as provided therein. A notice was served upon defendant by the Secretary, requiring it to appear at a designated time and place, and to show cause why its license should not be revoked. A hearing was had by the Secretary on July 19, 1934, at which hearing the defendant appeared and asserted its position, which is that it should not be required to comply with the terms and conditions of such license because it is engaged solely in intrastate commerce, and further, if the statute is construed so as to include it, such statute is unconstitutional and void as to it. Afterwards, to wit, on August 2, 1934, the Secretary issued an order revoking the license of defendant, effective as of that date. The defendant, however, still asserting that it did

not fall within the provisions of such act, or that, if it did fall within the provisions thereof, such act was unconstitutional, continued to engage in the business of distributing milk within such area, and is so engaged at this time. The evidence is undisputed that the defendant produces a small amount of the milk distributed by it, and that the remainder of milk, cream, etc., distributed by it is purchased from producers within a radius of five miles of Greenwood, and within either Johnson or Marion county, Ind. All of the milk, etc., distributed by it is produced within the boundary lines of these two counties, and the defendant purchases such product directly from such producers. It is never outside the boundary lines of such counties. Substantially all of the product produced or purchased by it is distributed in the form of milk or cream in either Marion or Johnson county to the ultimate consumer or to manufacturers who are engaged in the business of the manufacture of butter, cheese, or other dairy products. A very small amount remaining is made into cottage cheese by defendant and distributed to consumers in one or both of such counties. There is no evidence that any of the product handled by the defendant is transported from Indiana into another state, even after it leaves its possession and control. The facts are that all of such product is consumed within the state of Indiana. None of the milk, cream, cottage cheese, etc., handled or distributed by the defendant is ever outside the state of Indiana. If any dairy products are manufactured from the milk or cream purchased and distributed by the defendant by some person other than it, there is no evidence that any of such manufactured products are shipped or transported to any point, or points, outside the state of Indiana. These, in brief, are the undisputed and uncontradicted facts in this case.

The statute under which the Secretary acted in the issuance of the license in question is section 8 (3) of what is known as the "Agricultural Adjustment Act" (7 USCA § 608 (3), and so far as applicable reads as follows:

"In order to effectuate the declared policy, the Secretary of Agriculture shall have power—* * *

"(3) To issue licenses permitting processors, associations of producers, and others to engage in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof."

It is the contention of the plaintiffs that the milk, cream, etc., distributed by the defendant is, within the meaning of this statute, "in the current of interstate * * * commerce * * *" and therefore that the defendant is subject to the terms and conditions of the license issued by the Secretary. It is further contended that it should not be permitted to operate unless it complies with the provisions of such license. On the other hand, the defendant contends that it is not in any manner engaged in interstate commerce; that the statute in question does not apply to it; and that, therefore, the Secretary has no authority, under such statute, to include it in the license issued by him. It is further contended by the defendant that should such statute be construed so as to give authority to the Secretary to include the defendant under such license, such statute is unconstitutional and void as to it.

The first question, therefore, to be determined is whether or not the statute in question, known as the "Agricultural Adjustment Act," authorizes the Secretary of Agriculture to impose a license upon the defendant under the facts in this case. If it should be determined that the Secretary, under such statute, has such authority, then the court must proceed to determine the constitutionality of such statute. If, however, it is determined that the Secretary has no such authority, under such statute, then it will be unnecessary to proceed further.

It is conceded that the milk, cream, cottage cheese, and all products handled and distributed by the defendant never leave the state of Indiana from the time of their production until they leave its control. There is no evidence that such products, or any dairy products which may be manufactured therefrom, ever leave the state of Indiana, even after they leave the possession and control of the defendant. The facts are that such products, or manufactured products, never leave the borders of Marion and Johnson counties, Ind., in so far as the evidence discloses, both of which counties are located near the center of the state, and are at least seventy or seventy-five miles from the boundary line of the state in any direction. The "Indianapolis Sales Area," as defined in the license in question, includes the territory within the corporate limits of Indianapolis, and the territory within the boundary lines of the county of Marion, Ind. The place of business of the defendant is not within such area; however, it does distribute some of its product therein.

It must first be determined whether or not the defendant, whose business and every

transaction by it are entirely intrastate, is included within the statute so as to require it to comply with the terms and conditions of the license in question, in order that it may continue in business. In other words, whether or not, under the statute, the Secretary is authorized to require the defendant to comply with the terms and conditions of such license. It seems clear that the Secretary has authority to require distributors to comply with the terms and conditions of such license *only* if the product which they handle or distribute is "in the current of interstate or foreign commerce"; provided, of course, such statute is constitutional. Naturally, the first inquiry must be as to the meaning of the term "in the current of interstate * * * commerce," as used in the statute. The plaintiffs contend that milk, cream, dairy products, etc., are naturally transported from one state to another, and that statistics disclose that a large per cent. of such products produced in any one state are so transported. Thus, it is reasoned that a "current" of commerce is created between the various states in which milk, cream, dairy products, etc., are transported. It is therefore logical to conclude, according to the theory of plaintiffs, that all such products handled or distributed by this defendant in the "Indianapolis Sales Area" are "in the current of interstate * * * commerce," as contemplated by the statute, whether such products are, in fact, actually transported outside the state of Indiana or not. This theory is supported by a lengthy affidavit of E. W. Gaumnitz, Economic Advisor to the Dairy Section of the Agricultural Adjustment Administration, which affidavit is filed in this cause and is a part of the evidence upon which the plaintiffs rely. The difficulty with this theory is that the evidence conclusively shows that none of the products handled or distributed by this defendant enters such a "current," if, in fact, such a "current" exists. The statute specifically makes provision for the persons or class of persons who shall be subject to its provisions and who shall be subject to the terms and conditions of any license issued thereunder by the Secretary. It provides that the license so issued shall permit "* * * others to engage in the handling, *in the current of interstate * * * commerce,* of any agricultural commodity or product thereof." 7 USCA § 608 (3). Under this statute, the product or commodity must necessarily come within the provision of the statute at a time when it is under the control of the person sought to be licensed. Otherwise, one would be liable for the acts of some other person, over whom he has abso-

lutely no control. Under the evidence in this case all obligations and liabilities of the defendant ended when it finally disposed of its product, and the course taken by such product during the time it was in the possession and under the control of the defendant determined whether or not it was in interstate commerce in so far as the defendant is concerned.

A study of this statute leads one to conclude that Congress never intended to enlarge or extend the powers or authority of the person administering such statute so as to enable him to compel those engaged solely in intrastate business to comply therewith. This is especially true, in view of the fact that at the last session of Congress an unsuccessful effort was made to amend such statute so as to apparently enlarge the authority of the Secretary. The amended act, section 8 (3), which failed of passage during such session, reads in part as follows: "* * * engaging in the handling of any agricultural commodity or product thereof, or any competing commodity or product thereof, in the current of or in competition with, or so as to burden, obstruct, or in any way affect interstate or foreign commerce." It seems clear that Congress understood fully the meaning of the statute in question, and that it did not care to undertake to give to the Secretary any broader power or greater authority than that included in such statute.

It has long been settled that matters purely local in character must be determined by the state. The business of a citizen of a state, which is purely local, must be governed and controlled by such state. However desirable it may be for the federal government to regulate business, whether local or not, yet such regulation, when it conflicts with the Federal Constitution, cannot be maintained. The Supreme Court of the United States has spoken upon this subject many times, no expression of which is clearer or more forceful than that in Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 532, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724:

"It may be desirable that such laws be uniform, but our federal government is one of enumerated powers; 'this principle,' declared Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, 'is universally admitted.'

"A statute must be judged by its natural and reasonable effect. * * * The control by Congress over interstate commerce cannot authorize the exercise of authority not entrusted to it by the Constitution. * * * The maintenance of the authority of the states

over matters purely local is as essential to the preservation of our institutions as is the conservation of the supremacy of the federal power in all matters entrusted to the nation by the federal Constitution.

"In interpreting the Constitution it must never be forgotten that the nation is made up of states to which are entrusted the powers of local government. And to them and to the people the powers not expressly delegated to the national government are reserved. * * * The power of the states to regulate their purely internal affairs by such laws as seem wise to the local authority is inherent and has never been surrendered to the general government. * * * "

The language used by the Supreme Court in the case of Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 86, 67 L. Ed. 237, is significant and is applicable to the instant case, wherein it said: "If the possibility, or indeed certainty, of exportation of a product or article from a state determines it to be in interstate commerce before the commencement of its movement from the state, it would seem to follow that it is in such commerce from the instant of its growth or production, and in the case of coals, as they lie in the ground. The result would be curious. It would nationalize all industries, it would nationalize and withdraw from state jurisdiction and deliver to federal commercial control the fruits of California· and the South, the wheat of the West and its meats, the cotton of the South, the shoes of Massachusetts and the woolen industries of other states at the very inception of their production or growth, that is, the fruits unpicked, the cotton and wheat ungathered, hides and flesh of cattle yet 'on the hoof,' wool yet unshorn, and coal yet unmined because they are in varying percentages destined for and surely to be exported to states other than those of their production." See, also, Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715.

In a recent case decided by the District Court for the Northern District ,of Texas, United States v. Lieto et al., 6 F.Supp. 32, 35, the court used the following language: "Local business, business confined exclusively to- a state, business which does not impinge upon or affect, or disturb interstate commerce, is wholly beyond the fingers of the national government. Such business is amenable to the local government."

In the instant case, the business of the defendant is purely local, in no manner connected with interstate commerce, and cannot be affected by the statute in question. The fact that a large per cent. of the milk, cream, and dairy products produced and manufactured within the United States may be transported in interstate commerce does not change or alter the situation in so far as this defendant is concerned. Heisler v. Thomas Colliery Co., supra. The fact remains that none of the milk, cream, etc., handled by it enters interstate commerce, or is in the "current" thereof. The word "current" must be given its ordinary meaning, that of "flowing" or "passing on." The products or commodities handled or distributed never "flowed" or "passed on" beyond Marion and Johnson counties, both in Indiana, and therefore such products or commodities never entered the "current of interstate * , * * commerce," as that term is used in the statute under consideration. See Irma Hat Co. v. Local Retail Code Authority for Chicago, Inc., (D. C. N. D. Ill.) 7 F.Supp. 687; United States v. Mills (D. C. Md.) 7 F.Supp. 547; Royal Farms Dairy, Inc., et al. v. Wallace et al. (D. C. Md.) 7 F.Supp. 560; Hart Coal Corporation et al. v. Sparks, U. S. Attorney et al. (D. C.) 7 F.Supp. 16; Edgewater Dairy Co., Inc., et al. v. Wallace, Sec. of Agriculture, (D. C.) 7 F.Supp. 121.

It is urged in the brief of plaintiffs that "to deny the preliminary injunction applied for herein inevitably means a collapse of the Indianapolis Milk Market and a complete ending of the Administration's milk program in Indianapolis." The defendant is entitled to the protection afforded it by the Constitution, and certainly the plaintiffs would not have it deprived of that protection, ˉeven though the granting to it of such protection might affect a planned program of an administrative body of the government.

The business of the defendant, being entirely intrastate, is in no manner affected by the statute in question, and it is not required to comply therewith. It necessarily follows that the Secretary has no authority, under such statute, to require this defendant to comply with the terms and conditions of the license in question. Having thus determined, it is not necessary to consider the constitutionality of such statute.

The bill of complaint should be dismissed for want of equity, and the prayer of ˈthe defendant for an injunction, as set forth in its counterclaim, should be granted.

A decree will be prepared accordingly.