674

## UNITED STATES v. FRENCH.
### No. 2691.

District Court, W. D. Michigan, S. D.
March 29, 1935.

Joseph M. Donnelly, U. S. Atty., of Grand Rapids, Mich.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

In this suit petitioner seeks to enjoin alleged violation of the code of fair competition for the retail solid fuel industry, particularly of those provisions which require that each member shall make reports periodically on wages, hours of labor, tonnage, etc.; those which limit hours of labor and fix hourly rates of wages; and those which require a list disclosing prices, terms, and conditions of sales and a report of all sales, showing quantity and prices, to be filed with the divisional code authority.

Defendant urges, among other defenses, that the National Industrial Recovery Act (48 Stat. 195) is not applicable to his business because, as applied to him, it constitutes an attempted and unwarranted regulation of intrastate commerce. Other defenses are raised but discussion thereof is deemed unnecessary.

The defendant is a retailer of coal in the village of Caledonia, Mich., a community of less than five hundred inhabitants, situated about sixteen miles from the city of Grand Rapids. As one branch of a general line of merchandising and milling, he is engaged in the business of buying coal in carload lots and reselling it to customers who consume the coal for domestic purposes. The coal is shipped from mines in Ohio and Kentucky. Defendant's business is transacted principally within a radius of about six or seven miles of the village. The total sales of coal are about 2,500 tons a year. The coal is unloaded from cars into bins and stored there until sold, when it is loaded by gravity into customers' conveyances or into a truck for delivery. From two to three minutes' time is required to load a truck. Sales are for cash. Three employees use small portions of their time in assisting with this branch of defendant's business.

Petitioner contends for application of the doctrine that transactions which are a part of or which necessarily affect a well-defined current of interstate commerce in commodities are within the federal power to regulate interstate commerce. It is urged that the stream of interstate commerce in coal begins with the mining and does not come to rest until the coal is finally consumed. The following cases are cited in support of this contention: Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518; Board of Trade of City of Chicago v. Olsen et al., 262 U. S. 1, 43 S. Ct. 470, 67 L. Ed. 839; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed.

458; Dahnke-Walker Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239; Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227.

The cases principally relied upon by the government to sustain the application of the "current" or "stream of commerce" doctrine, with the result that acts essentially and obviously intrastate shall be considered as affecting interstate commerce because of the necessity arising out of present economic conditions to regulate certain industries in their entirety, are: Bedford Co. v. Stone Cutters' Association, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791; Binderup v. Pathé Exchange, Inc., et al., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; Greater New York Live Poultry C. of C. v. United States (C. C. A.) 47 F.(2d) 156; and Local 167, International Brotherhood of Teamsters, etc., v. United States, 291 U. S. 293, 54 S. Ct. 396, 78 L. Ed. 804. Examination of these cases brings the conclusion that they do not furnish adequate support for the doctrine here advanced. The transactions there being considered were under attack either as constituting elements of a conspiracy alleged to be unlawful under the Sherman Anti-Trust Act (15 USCA § 1 et seq.), or as involving commodities which were moving or which it was the clear intention to transport across state lines.

Several of the cases cited relate to local activities performed in a period between the termination of one interstate journey and the beginning of a new one, e. g., Swift & Co. v. United States, supra; Binderup v. Pathé Exchange, Inc., supra; Stafford v. Wallace, supra; Board of Trade of City of Chicago v. Olsen et al., supra; Lemke v. Farmers' Grain Co., supra; Dahnke-Walker Co. v. Bondurant, supra; and Eureka Pipe Line Co. v. Hallanan, supra; others to cases involving conspiracies with intent to interfere with interstate commerce in which injunctions were sought to restrain violation of the Sherman Anti-Trust Act, 26 Stat. 209, §§ 1, 2 (15 USCA §§ 1, 2; Bedford Co. v. Stone Cutters' Association, supra; Local 167, International Brotherhood of Teamsters, etc., v. United States, supra; and Greater New York Live Poultry C. of C. v. United States, supra. As to the latter class of cases, they may be disposed of by recognition of the frequently stated principle that the Sherman Act denounces every conspiracy in restraint of interstate trade, including those that are to be carried on by acts constituting intrastate commerce. Loewe v. Lawlor, 208 U. S. 274, 301, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Bedford Co. v. Stone Cutters' Association, supra; Local 167, International Brotherhood of Teamsters, etc., v. United States, supra; and Greater New York Live Poultry C. of C. v. United States, supra.

In the case of Hammer v. Dagenhart, 247 U. S. 251, 272, 38 S. Ct. 529, 531, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, Mr. Justice Day said:

"Over interstate transportation, or its incidents, the regulatory power of Congress is ample, but the production of articles, intended for interstate commerce, is a matter of local regulation.

"'When the commerce begins is determined, not by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, nor by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state.' Mr. Justice Jackson in Re Greene (C. C.) 52 F. [104] 113. This principle has been recognized often in this court. Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615, and cases cited. If it were otherwise, all manufacture intended for interstate shipment would be brought under federal control to the practical exclusion of the authority of the states; a result certainly not contemplated by the framers of the Constitution when they vested in Congress the authority to regulate commerce among the States. Kidd v. Pearson, 128 U. S. 1, 21, 9 S. Ct. 6, 32 L. Ed. 346."

If actual delivery to a common carrier determines the beginning of interstate commerce, then it follows as a necessary corollary that under usual circumstances it ends upon actual delivery to the consignee. In the present controversy it is apparent that there is no support for the claim that interstate commerce is involved or affected, either directly or indirectly. When the coal has reached its destination, there is no longer involved or intended any element of transportation, either interstate or intrastate, by common carrier or otherwise, with the exception of that by the purchaser to place of final consumption. Of the claim that such a transaction is within the interstate clause of the Constitution, it may be said, as in the case of Hammer v. Dagen-

hart, supra, that such a result was "certainly not contemplated by the framers of the Constitution."

In the case of Wiloil Corp. v. Commonwealth of Pennsylvania, 294 U. S. 169, 55 S. Ct. 358, 79 L. Ed. —— (decided February 4, 1935), the general principle is recognized that if goods carried from one state have reached destination in another where they are held in original packages for sale, the latter has the power without discrimination to tax them, as it does other property within its jurisdiction.

In the case of Darweger v. Staats, 153 Misc. 522, 275 N. Y. S. 394 (decided November 13, 1934), it was held that one who purchased his coal within the state from truckers who purchase and transport the same from a foreign state is not engaged in interstate commerce and that such business is purely intrastate.

The case of United States v. Rogles et al., etc. (D. C. E. D. Missouri) 9 F. Supp. 857, decided January 24, 1935, coincides with the view here taken, it being there held that the regulations of the divisional code authority are not effective as applied to a retail coal dealer.

■ The principle plainly deducible from the authorities is that when a shipment has acquired an interstate character, that status continues only until the load reaches the place where the parties intended that the movement should finally end.

It is therefore the judgment of the court that after the shipments of coal had come to rest at Caledonia, they became subject to regulation only as intrastate commerce. See Hart Coal Corporation v. Sparks (D. C.) 7 F. Supp. 16; United States v. Mills (D. C.) 7 F. Supp. 547; Irma Hat Co. v. Local Retail Code Authority (D. C.) 7 F. Supp. 687; and United States v. Gearhart, 7 F. Supp. 712.

■ But even if the foregoing conclusions are stated too broadly in view of the existing economic emergency, they appear to be wholly justified as applied to the business conducted by defendant, in the absence of an affirmative showing that interstate commerce is to some extent endangered by his activities. The court can discover no causal connection, direct or indirect, between interstate commerce and hours of labor and wage scales in a retail business conducted in a rural community in which the annual sales of coal approximate 2,500 tons. No proof appears here which will warrant the conclusion that interstate commerce is in any manner affected. The relationship contended for is either infinitesimal or entirely illusory. Were such remote transactions as those in question to become subjects of federal regulation under the commerce clause of the Constitution, the reserved power of the states would become largely ineffectual.

Extension of application of the interstate commerce clause sufficiently to follow commodities from the place of production to the point of consumption (as contended) would necessarily imply that the domestic servant, the delivery boy, the street corner fruit vendor, and others engaged in any capacity in handling products of other states, are engaged in interstate commerce and subject to federal regulation accordingly. Exercise of powers to license, inspect, and to punish for infraction of criminal codes, based upon such novel theories, would result in severe limitations upon the right of local self-government. The very contention assumes the impotency of the state to regulate its purely internal affairs. Adoption of the principle asserted would tend to create the condition assumed but which is not shown now to exist.

If the original constitutional concept of an indestructible union of sovereign states is to be changed to that of a benevolent paternalism over commonwealths possessing only remnants of power, that end must be accomplished through constitutional powers of amendment and not by an inverted interpretation of the commerce clause. More complete reversal of fundamental principles of our government cannot be conceived.

It is the conclusion of the court that the relationship between the defendant and his employees as concerns wages and hours of service has no apparent bearing upon interstate commerce. Any effect it may possess is too insubstantial even under present economic conditions to warrant the extension thereto of federal regulation under the commerce clause of the constitution.

A decree will be entered dismissing the bill of complaint.