ALLEN et al. v. WALLACE, Secretary of Agriculture et al.

No. 1053.

District Court, N. D. Oklahoma.

Oct. 14, 1935.

Oras A. Shaw, of Tulsa, Okl., for plaintiffs.

Clarence E. Bailey, U. S. Dist. Atty., Paul Simms, Asst. Dist. Atty., and Mather M. Eakes, all of Tulsa, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

Plaintiffs seek to enjoin the Secretary of Agriculture, acting through the Milk Market Administrator for the Tulsa area, from enforcing the Tulsa Milk License. The individual plaintiffs, numbering 55, are dairy farmers residing in Oklahoma and selling their milk to the various distributing plants named as defendants herein. Upon final hearing for permanent injunction the evidence establishes, together with the admissions in the pleadings, that the Tulsa Milk License fixes the price distributors shall pay to plaintiffs for milk, and that the plaintiffs only receive the amount which the distributor was required to pay for the milk under the license. The distributors are required to make deductions from the price of the milk, which are collected by the Milk Market Administrator, for the purpose of defraying the expenses of the Administrator's office and to create an available fund to cover defaulting payments by distributors into an equalization pool under the license. The distributors are prohibited from purchasing milk from producers such as the plaintiffs, without making these deductions.

The Congressional Act, under which the Milk Market Administrator acts and the Tulsa Milk License is sought to be enforced, is known as the Agricultural Adjustment Act, 7 USCA § 601 et seq., under the authority conferred by said act upon the Secretary of Agriculture, a defendant herein. It is unnecessary to set out the details of the license for milk for the Tulsa area, as the plan and scheme for the marketing of milk in this area is similar to the arrangement for the marketing of milk in the Oklahoma City area, and elsewhere, and the plan has been described in more or less detail by the other District Courts. Those decisions will be referred to herein.

It clearly appears from the evidence that the plaintiffs in this action are local producers and sellers of milk, wholly within Tulsa county and the adjoining counties, and that the milk produced and sold by them is locally consumed within the Tulsa area. These facts are undisputed, and from such facts it is clearly beyond the power of Congress, under article 1, section 8, of the United States Constitution, to regulate and fix the price of milk produced by plaintiffs. The power of regulation vested in Congress goes only to interstate commerce, as defined by cases, but does not extend to purely intrastate commerce. The act under consideration here has had the attention of other courts. See Edgewater Dairy Co. v. Wallace (D. C.) 7 F. Supp. 121; Douglas v. Wallace (D. C.) 8 F. Supp. 379; Hill v. Darger (D. C.) 8 F. Supp. 189; United States v. Neuendorf (D. C.) 8 F. Supp. 403; United States v. Seven Oaks Dairy Co. (D. C.) 10 F. Supp. 995; Royal Farms Dairy v. Wallace (D. C.) 8 F. Supp. 975; United States v. Greenwood Dairy Farms (D. C.) 8 F. Supp. 398.

In the case of Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 8, 32 L. Ed. 346, in the opinion by Mr. Justice Lamar, the court said:

" 'The genius and character of the whole government seem to be that its action is to be applied to all the external concerns of the nation, and to those internal concerns which affect the states generally; but not to those which are completely within a particular state, which do not affect other states, and with which it is not necessary to interfere for the purpose of executing some of the general powers of the government. The completely internal commerce of a state, then, may be considered as reserved for the state itself.' * * *

"The legal definition of the term, as given by this court in County of Mobile v. Kimball, 102 U. S. 691, 702 [26 L. Ed. 238], is as follows: 'Commerce with foreign nations and among the states, strictly considered, consists in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities.' If it be held that the term includes the regulation of all such manufactures as are intended to be the subject of commercial transactions in the future, it is impossible to deny that it would also include all productive industries that contemplate the same thing. The result would be that congress would be invested, to the exclusion of the states, with the power to regulate, not only manufacture, but also agriculture, horticulture, stock-raising, domestic fisheries, mining,— in short, every branch of human industry. For is there one of them that does not contemplate, more or less clearly, an interstate or foreign market? Does not the wheat-grower of the northwest, and the cotton-planter of the south, plant, cultivate, and harvest his crop with an eye on the

prices at Liverpool, New York, and Chicago?"

The fact that intrastate commerce alone is involved is, in my opinion, sufficient for the granting of a permanent injunction in this case. However, it is urged that the enforcement of the Tulsa Milk License should be enjoined because the congressional act is an invalid delegation of legislative authority to the Secretary of Agriculture, because of the general terms employed in the act, and the lack of definite and specific instruction as to policy and standards. A. L. A. Schechter Poultry Corporation v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, involving a consideration of the National Industrial Recovery Act of June 16, 1933, 48 Stat. 195, is cited in support of the proposition. It is unnecessary to determine the validity of the act with respect to its indefiniteness, as well as a delegation of powers, in view of the fact that no interstate commerce is involved in the instant action.

It is manifest from a consideration of the decisions of the Supreme Court of the United States, Congress is without power under the commerce clause of the Federal Constitution to regulate matters purely local to a community which constitute intrastate commerce. The control of intrastate commerce is within the reserve power of the states. The plaintiffs are entitled to a permanent injunction, and the decree may be entered.